Morning, Your Honors. Shifting gears and representing the defendants here, the appellants here, M.C. Dean and the several open band entities, Sanford Saunders again in front of the court, now regarding Judge Trenger's motion for summary judgment entered in the case involving Lansdowne on the Potomac Homeowners Association. And Your Honor, first, Your Honors, first I'd like to start out with what this case is not about. This case is not about an exclusive agreement to provide video services. This case is not about Openband at Lansdowne or any other entity disobeying an FCC order. This case is not about a concrete dispute that allows the court to avoid issuing an advisory opinion. This case is not about a standalone easement for an exclusive right to install and operate video equipment. And this case is not about whether Openband at Lansdowne easement stays or whether it is vitiated. As a threshold matter, again, this case is not, the plaintiffs do not have standing either as a matter of Article 3 standing to bring this case. No, there's a, there's something troubling to me about these these cases because when when I read the order, the FCC regulation, it seems so clearly directed at prohibiting exactly what's taking place here. And, you know, I can't get, I'm beginning to get the idea that these standing questions and rightness questions, a lot of them are just a fog that's being thrown up to provide protection for a shell game that's going on here with all these different companies and different agreements. And that you sort of, you have something that is, that the order just says in the plainest English it could possibly say, that these exclusivity agreements are null and void. And between the standing argument and the rightness argument and the different companies that are involved and the, you know, and the different agreements that are involved, it's simply a strategy, overall strategy, to do at any cost what the FCC order prohibits. And I keep asking myself, you know, if we can't get at this in some way, we're allowing consumers of cable services, we're denying them a choice in terms of the quality of service and in terms of pricing. And the whole FCC order was a pro-competitive order and here we're asked to put our imprimatur one way or another upon a distinctly anti-competitive arrangement. And so you can step back and ask, look what's happening at the end of the day, which is that we're being sort of made party to an activity which just seems to me an overall, in an overall sense, is directly contrary to what the FCC was trying to do. I mean, we're almost providing a blueprint for cable providers such as yourself to wipe out competition. Here's how you do it. The court's satisfied. Your Honor, the FCC made decisions, the FCC made choices as to what it was going to put in its order and how far its order would go. And that is all the court has to work with. The FCC's order, as I said, the FCC's order required that a regulation be passed that made the enforceability of an exclusivity provision involving video to be improper and that it was unenforceable. It had to deal with the fact that these agreements were written six years before the FCC issued that order. At the time these agreements were issued, it wouldn't apply to this, the order wouldn't apply to this situation because developed communities like Lansdowne-on-the-Potomac weren't considered MDUs. So at the time when OpenBand and the developers signed this agreement, it wasn't covered too. At the time this was signed in 2001, Is the Homeowners Association party to the contract here? It's the same setup, Your Honor. It's the same setup except, of course, it's not in one particular because the Homeowners Association, LHOA, buys video services for its clubhouse. I mean, it's a direct consumer? It is a direct consumer, not I have my questions about that. But here, that very fact is absent. I mean, LHOA is a direct consumer. It doesn't cure all the impediments to their cause of action and to their that the standing still requires that the case be ripe and standing still requires that the court be able to provide redress to the claimed injury. And really the complaint that Lansdowne has is that nobody else, they can't get service from somebody else. And here we have a developed record where they have talked to Verizon about service and what Verizon has proposed is a bulk billing service where they provide service to a hundred percent of the homeowners. They don't have an offer from Verizon to be an alternative service, it's a sufferer. Since the exclusivity agreement exists, of course it's going to be an impediment for them to contract with anyone else. Maybe they won't be able to get a contract, but with the exclusivity agreement with your group, how can they even contract with another group? Your Honor, part of the problem here and why this case isn't ripe is we don't know why the other entities haven't contracted with Openband. But what you say to us is our people may let there be a contract. We don't decide whether the case is ripe on the good will of your client. If that exclusivity agreement stands as a barrier to contracting, and it's illegal. The existence of the exclusivity agreement, though, is not barred by the FCC order. It is the enforcement. Right. That's what the regulation says and we haven't enforced it. That's what the injunction prohibits. Right, exactly. That's all the injunction prohibits. You shouldn't be on that. The injunction is an injunction is an adjoining enforceability. You're right. It still goes back to that there was no standing to bring the case. It doesn't cure, it doesn't provide them the relief they seek. It doesn't provide them with all of the relief they seek. No, it doesn't provide them with any of the relief they seek. The exclusivity agreement is a bar to the relief that they seek. Some of the relief they seek. If I were in Verizon's shoes or in Comcast's shoes, I wouldn't go in and put in the, and explore, putting in the, making the investment that was necessary in terms of wires or cable when I was going to face a protracted legal fight. And I had a protracted legal fight on my hand. Why would they, why would they enter? Your assumption that to say that they would have a protracted legal fight. Why don't you just, in writing, give up this exclusivity agreement if you're, if you're not going to enforce it. Your Honor, it's, if our obligation under the FCC order, assuming the FCC order applies, is not to enforce it. At this stage, no one has made a proposal. We haven't enforced it against anybody. But the reason, though, but it stands there as a huge deterrent to any kind of a proposal. Your Honor, we actually have some insight, though, in the record as to why, for example, Verizon has not, Verizon raised multiple issues as to why, as to the possible reasons not to go forward with the relationship. So they make a business judgment. But the, you know, one of the, one of the significant weights on the scale which weighs against their going in there has got to be this exclusivity arrangement. Now you have a Homeowners Association, which is, you know, a direct consumer of the service. It buys, it buys the service from, you know, for the clubhouse. Your Honor, we don't know. I want to make those purchases on a more competitive basis. It might want to deal with other, uh, with other providers. It might want to be free to explore a variety of arrangements that it cannot explore with these provisions in those contracts. Your Honor, we do know or easements, as you call your honor. We do know that Verizon has said they will only do this as a bulk billing agreement. And they can't get, and so one of the issues is whether they can get a hundred percent payment from all the homeowners. And the court can't, you know, that's something Verizon's thinking about. We don't know what's significant. We don't know what's driving Verizon's business decision. But I don't understand what Verizon's future business decisions and how they weigh the future costs and benefits, which I have no way of knowing what goes on within their boardroom. But the question is whether the homeowners and the homeowners association are entitled to have Verizon make a business decision in a legal terrain. Your Honor, in a lawful, in a lawful landscape. Your Honor, the injunction has been in place for seven months. We did not move to stay the injunction, and we are not aware of any proposal that has been made. And no, nobody's coming. We don't know that. Okay, let's assume you're right on all that. Then what is your harm for us, for an affirmance here? The harm from the affirmance, if it is limited to the video service, and there is no... All we're talking about is affirmance, not extension. Affirmance. What's your harm? There may not be any harm. We don't know. You may not have a case in controversy if you're saying... The problem is, Your Honor, the problem is we don't know. Well, if you do know, if you know that there's going to be a new contract, then it expressly undercuts the argument you're making to us now. So far what everybody, so far the one proposal that we have seen is one that would impinge upon rights that are untouched and actually protected by the 2007 order. And that's the point where the 2007 order doesn't make the easements go away. Our easements stays. Our rights to run our equipment stay. And if anybody were to act, even in providing alternative service, since it's in the know whether the wires are going to have any impact. The mission to us is that you're, you are not going to object. That this isn't right, because there's been no objection by you to any other internet provider. So if we follow that down the path, then you wouldn't object, even if new wires are put in. And Your Honor, the answer to that is yes, but it's not that simple. Because of how the wires are installed, where they're installed, and how the project goes forward. Voluntary cessation of unlawful activity doesn't moot a case. I mean, we don't know. You don't, you haven't objected so far. Who's to say you're not going to object? I mean. But even if, but if you did make a representation that you're not objecting, you wouldn't have any grounds for appeal. So it's, it seems to me that this argument is fraught for you. Your Honor, we still have the grounds for appeal. And there is the other issue as to whether the easements are even an appropriate subject for review under the 2007 order. The word easement appears nowhere in the 2007 order. It is not there. What is there is the FCC's affirmative statement that they are staying away from a condemnation of property, a permanent invasion in paragraph. See, this is the whole part of the evasive web of this, of these standing arguments, these rightness arguments, these multiple entity arguments, these multiple agreements. And now the final evasion is we're going to call a contractual arrangement that you can't, that we're going to evade the FCC's exclusivity order by calling the contractual provisions easements. It's one thing after another. The whole thing is a subterfuge. It's one thing after another. Your Honor, may I respond? My time is up. You have some rebuttal. I'll go into that. Your Honor, it's not subterfuge when, if that is the case, that the FCC made that ruling and is condemning the property and it is a permanent invasion, the FCC has engaged in a taking. If the FCC affirmatively states that it is not doing so, which is what it did, then it's not an evasion and we don't have to cede that right. And if the FCC has engaged in a taking, then the FCC has violated the Communications Act. Because the FCC, if it engages in a taking, has to, at the same time, establish a provision for compensating the owners of property that is taken and they didn't do so. So for this court to find that the FCC included easements, it would have to find that the FCC violated the law. And what's interesting is in the FCC's amicus brief, they don't touch this issue. The FCC does not come in here and claim that they were including easements when they said they were going after exclusive service agreements. What you want to do is simply repeal the FCC order because parties would invariably choose to evade the order by styling all their exclusivity rights easements, henceforth. Every exclusivity right would be placed in the form of an easement. Your Honor, no sir. We would not, we would not be doing that and we're not trying to attack the regulation. We're just trying to say that this is how the regulation exists. Did you just represent to us that the FCC does not take a position on the easements question? The FCC, in its brief, made reference to the fact that the easements were cited in the footnote, but the FCC doesn't address paragraph 55. The FCC agrees with the District Court that, quote, it would be anomalous that a provider of video programming services could so easily evade the order merely by structuring its prohibited exclusivity as an easement rather than a contract. Your Honor, but they still don't address... That sounds to me like they're taking a position. They're taking a position now. It's a litigation position, but they're not addressing what the court, what the FCC said in paragraph 55. I apologize, Your Honor. I apologize, Your Honor. Your time is up. But it was, it was to paragraph 55. Thank you. May it please the Court, I'm Christopher Wright representing Lansdowne Homeowners Association. With me at counsel table is Stephen Fredley, to whom I'm very grateful at trial for handing to making clear that the Lansdowne Homeowners Association is a consumer of open bands cable service, uses it in the physical fitness facilities, and the Lansdowne Homeowners Association would very much like to change its, its own cable provider. So separate and apart from the associational standing argument, this case is easy on standing because Lansdowne is itself a consumer. Can you define for me in sort of words of one I'll borrow the words which were well stated from a declaration of Larry Miller that isn't in the joint appendix because this really wasn't disputed, but the Lansdowne Homeowners Association purchases for its own use video services from open band. Right. The video services are purchased for use in the question I'm just want you to tell me what your injury is. The Lansdowne wants to get another cable provider. I know you want to, but the relief that you're seeking here doesn't necessarily get you another provider, right? That's why I'm trying to get you to try to tease out the injury. The relief we want is the declaration that the easements and all the exclusivity agreements are null and void. That's what we want from the court. What would that give you the opportunity to hire another cable provider? For what services? At least for cable services. I don't want to give up, it's apparent that there will be an argument later on about the triple-play option being available, but at least I don't understand that decided at this point, but I'm certainly not conceding it, but at least Lansdowne would like to be able to get a wired cable service. And let me just say that while we aren't necessarily going to be able to get that service, some other group is going to have to step up here, right? So let me make two points in response. First, we heard about Verizon and that's the harder case, but it's hardly hypothetical or that a company that's in the business of providing cable service will agree to provide cable service to somebody who wants it if there isn't an exclusive agreement in the way. But the second point which makes this case easy is the Loudoun County franchise agreement with Comcast, which is in the joint appendix and the key provisions are at JA 491 and 492, and the provision at the top of 491 says franchisee, that's Comcast, shall make cable service available to any subscriber within the county. Then there are a bunch of conditions, but there's no argument about those conditions not being met. The other provisions relieves Comcast, which is at the top of the next page, of that duty to provide service if there's an exclusive agreement with some other provider. So if the exclusive agreement is declared null and void, Comcast actually has a duty to provide service at Lansdowne on the Potomac. We don't think we have to prove anything like that to show that our harm is more than hypothetical. You're still going to have to pay these people. Excuse me? You have a contractual obligation to pay them no matter what, right? We do. Let me say that at the beginning of the third volume of the service, we have a couple of declarations from people in Lansdowne who are already paying for direct TV service, and they'll explain at great length the failure of Open Band to provide high-definition TV stations that don't pixelate. There are already a number of people who find the service so unsatisfactory that they're paying for direct TV. They go on to say that they really don't like having dishes on their home. They'd rather have a wired provider. So again, my colleague, Mr. Fredley, has spelled out the harm in great detail in the record, and so it can't do better than to repeat some of what Judge Wilkinson said, but let me put it in this context. The District Court saw through the fog and refused to get tricked by the shell game, and the FCC's brief really puts the nail in the coffin here. I mean, under the Supreme Court's Talk America decision, the FCC's statement... Judge Motz's point about the FCC does take a easement business, because you had, you know, if we said an easement wasn't a contract, we'd be laughed out of the first-year class. Yes, Your Honor. It would eat up the whole regulation. It would, and just it's sort of accusing the FCC of not knowing that wired telecommunication service requires the use of an easement to string the wire. The FCC knows that quite well. Easements were in front of it when it adopted the order in 2007, but there's a heading on page 15 of the FCC's amicus brief that says, the order reaches easements like those at issue. It goes on for four or five pages, so I was astonished to hear that the FCC hadn't taken a position on this. Again, I... I think your colleague clarified what he was saying. I misunderstood what he was saying. I misunderstood the same way, Your Honor. May I ask, at this point, it might be best to ask our colleagues if they have questions. Judge Motz? Thank you. We have no further questions. Mr. Saunders, you have some rebuttal time. Your Honor, as counsel talked about the injury and what they wanted, they made the reference to all exclusivity agreements are null and void, and then backed up to say, at least for cable service. What did the district court say? The district court, the district court while addressing video and said the rest of the services weren't touched. Again, counsel can't... they keep pushing for more, and that's the problem of not having a real case in controversy. I thought he said he wasn't giving up the argument. I didn't think he said that the district court had granted him that relief, but maybe I misunderstood. But when asked what relief he wanted, he wanted all... I wrote down a quote, all exclusivity agreements are null and void. And as to the references to Verizon, Verizon has stated what it wants. Again, in the record, it wants 100% participation. So, right now, we don't see Verizon at all. You know, that's looking way down the road. You know, you keep talking about... you keep trying to throw this court into the middle of Verizon's decision-making process. And, you know, to me, that sounds very speculative, because I have no idea what... how a business would weigh the competing factors, and I don't see what relevance it has to the... ...particular anti-exclusivity provision of the FCC. It's... we have a very discreet... we have a very discreet issue before us. Again, you're right. It goes to the extent the relief that they seek. As they keep saying, is they want that alternative provider. This court can't give it to them because there's no evidence that there's an alternative provider... ...the market enables the market to operate under a lawful set of conditions. The market is not now operating. And to just allow the market to operate under a lawful... in a lawful landscape is itself relief. And in a manner of which the FCC itself has said in the order, and it doesn't address while it talks about the easements, and the easements being contracts. The easements are contracts, but they're contracts for real property, and it is fundamental that contracts for real property are treated differently. And to take that right away, that real... that real property right crosses over into a taking, and that is expressly what the FCC stated they would not do in the 2007 order. So whatever they want to argue now that they did in 2007, this is a problem for the... this is a problem for the commission, not some lawyers from the general counsel's office should be addressing. And this is why the statutory standing question and the CMG issue is relevant and this court should follow that. And there is no private right of action here because this is a policy decision. And this is a decision that should be made under Rule 4... because 4.0B does not allow for private litigants to come in and address general rulemaking orders that do not provide sufficient specificity. And all the debate here goes to the lack of sufficient specificity, and is why the court should not allow this plaintiff to drive this issue. This is for the FCC to clear up, and it can be done. There is a... there is a provision for them to file a complaint with the FCC and let the FCC clarify what it meant in paragraph 55, where if on one hand it is saying we want to get rid of contracts, and now they're going to backfill and say easements are contracts... All the... all the circuits seem to agree that there is a private right of action here under 4.0B, and that a rule may in some circumstances where it identifies the rights not responsibility of parties, it can qualify as an order. I mean, if easements are contracts, and the other circuits are saying that a rule can qualify as an order in some circumstances... And those circumstances are not present here, Your Honor, as we've argued in the brief. Why not? It identifies the parties to whom it applies. The open video system is an operator, and the MDUs are multiple dwelling units, and it tells the providers that exclusivity for video program is unenforceable. Your Honor, it's not sufficiently specific as to the parties identified. If you look at even the Ninth Circuit decision, there you had only one party that the order could be addressed to, which were the PUCs. The same thing in Altel was the Tennessee... You provided very clear notices to what's unlawful. I don't understand, in view of that, why it's not an order. It seems analogous to a judgment. Your Honor, our position, as we've stated in the brief, and I'll wrap up because my time is done, is it's a policy. And that's insufficient to go out to the general public, and now we can have, as the First Circuit said in New England Telephone, you could wind up with 70 different interpretations. And that's not what 401B was designed to do. Thank you, sir. We appreciate it. We'll come down and brief counsel and take a brief recess.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Stephanie D. Thacker